[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15060
_____

D.C. Docket No. 6:14-cv-01551-PGB-GJK


KROMA MAKEUP EU, LLC,
a United Kingdom Limited Liability Company,

Plaintiff-Appellee,

versus

BOLDFACE LICENSING + BRANDING, INC.,
a Nevada Corporation, et al.,

Defendants,

KIMBERLY KARDASHIAN,
a California resident,
KOURTNEY KARDASHIAN,
a California Resident,
KHLOE KARDASHIAN,
a California Resident,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 18, 2017)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and
ROSENBERG,[*] District Judge.

ED CARNES, Chief Judge:

Kimberly, Kourtney, and Khloe Kardashian appeal the district court's denial

of their motion to compel arbitration of Kroma Makeup, EU's claims against them

for cosmetics trademark infringement.  At first blush, the issue appears to require

application of Florida's doctrine of equitable estoppel under which a party to an

agreement who relies on it in a dispute with a non-party can be required by that

non-party to comply with other terms of the agreement, including the arbitration

clause.  But there is a wrinkle in this case:  the arbitration clause which the non-

party to the agreement is seeking to enforce is explicitly limited to disputes

between the parties.  What then?

I.

By Lee Tillett, Inc. developed and registered a trademark for a line of

cosmetics products known as Kroma cosmetics beginning in 2004.  In 2010 Tillett

contracted with Jay Willey Ltd. giving Willey the exclusive right to sell Kroma

_____

[*] Honorable Robin L. Rosenberg, United States District Judge for the Southern District of
Florida, sitting by designation.

2

cosmetics in the United Kingdom and European Union.  That agreement expired in

October 2012 and Tillett entered into a new one with Kroma EU, which contained

similar terms giving Kroma EU the exclusive rights to sell and distribute Kroma

products in the United Kingdom and European Union.  It also gave Kroma EU the

right to use the Kroma trademark.  The new agreement contained an arbitration

clause, which stated:

> If it is impossible to settle the disputes peacefully, the Parties agree that the <u>disputes arising between</u> them concerning the validity, interpretation, termination or performance of the present Contract, should be considered [in] independent arbitration in the State of Florida, United States.

 (emphasis added).

While that contract was in effect and with Kroma makeup being sold in the

United States and Europe, the Kardashians entered into a licensing agreement with

Boldface Licensing + Branding, Inc. to create a Kardashian makeup line called

"Khroma."  After the Khroma product line was released, Boldface filed a lawsuit

against Tillett seeking declaratory judgment that the Khroma name did not infringe

on Tillett's Kroma trademark.  Tillet filed trademark infringement counterclaims

against Boldface and added the Kardashians as counterclaim defendants.  Tillett,

Boldface, and the Kardashians settled that lawsuit in April 2014.  Despite Tillett's

representations to Kroma EU that it was protecting Kroma EU's interests and

3

recovering damages on its behalf, Tillett later refused to share any of its settlement recovery.

As a result, Kroma EU filed this lawsuit asserting trademark infringement and tortious interference claims against Boldface, vicarious liability for trademark infringement claims against the Kardashians, and a promissory estoppel claim against Tillett. Tillett and the Kardashians both filed motions to compel arbitration. The district court granted Tillett's motion to compel Kroma EU to arbitrate, and neither that ruling nor Tillett is in this appeal. The court, however, denied the Kardashians' motion to compel Kroma EU to arbitrate its claims against them, and this is their appeal from that denial. See 9 U.S.C. § 16(a)(1)(B) ("An appeal may be taken from . . . an order . . . denying a petition under [the Federal Arbitration Act] to order arbitration to proceed . . . .").

## II.

We review de novo a district court's denial of a motion to compel arbitration. Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011). In doing so, "we apply the federal substantive law of arbitrability, which is applicable to any arbitration agreement within the coverage of the FAA," keeping in mind the "healthy regard for the federal policy favoring arbitration." Id. (quotation marks omitted). Arbitration is, however, a matter of contract, and "the FAA's strong proarbitration policy only applies to disputes that the parties have

agreed to arbitrate." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). The issue of whether a non-signatory to an agreement can use an arbitration clause in that agreement to force a signatory to arbitrate a dispute between them is controlled by state law. See Lawson, 648 F.3d at 1170–71. The Kardashians and Kroma EU agree that Florida law controls on that issue.

While the Kardashians are not signatories to the agreement between Kroma EU and Tillett, they contend that they can compel arbitration of Kroma EU's claims against them by using Florida's doctrine of equitable estoppel. Under that doctrine, a defendant who is a non-signatory to an agreement containing an arbitration clause can force arbitration of a signatory's claims when "the signatory . . . must rely on the terms of the written agreement in asserting its claims against the nonsignatory . . . ." Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc., 158 So. 3d 644, 646 (Fla. 3d DCA 2014). A non-signatory, however, cannot invoke the doctrine to compel arbitration of claims that are not within the scope of the arbitration clause. Equitable estoppel does not allow a non-signatory to an agreement to alter and expand an arbitration clause that would not otherwise cover the claims asserted. What this means is that in order to establish that they are entitled to compel arbitration under Florida's doctrine of equitable estoppel, the Kardashians must show both that Kroma EU is relying on the

5

agreement to assert its claims against them and that the scope of the arbitration clause covers the dispute.

That two-step framework comes from the Florida District Court of Appeal's decision in Koechli v. BIP International, Inc., 870 So. 2d 940 (Fla. 1st DCA 2004). There the court first concluded that because the signatory plaintiff was claiming rights under the agreement, the non-signatory defendants could invoke equitable estoppel to estop the plaintiff from denying the defendants access to the arbitration provision in the agreement between the plaintiff and the other signatory to it. Id. at 941–42, 944–45. The court's analysis, however, did not end there. Instead, the court felt it necessary to determine whether the arbitration clause, which covered "any dispute between the parties as to any matter arising out of or relating to this contract," id. at 944 n.1, was broad enough to cover the dispute between the plaintiff who was a party to the agreement and the defendants who were not, id. at 945–46. Even though they technically were non-parties, the defendants were agents of a party to the agreement, had received rights and obligations under the contract, and were being sued for their actions taken as a signatory's agents pursuant to the contract. Id. That was enough. The Koechli court concluded that, "in the context of the unique facts of this case," the non-signatories were in the relevant sense parties to the contract because they had received rights and

6

obligations under it and because the claims arose from their actions taken as a signatory's agents.  Id.

What the Koechli court's analysis means is that under Florida law even if a non-signatory to an agreement containing an arbitration clause can invoke the doctrine of equitable estoppel to access that clause, she can compel arbitration under it only if her dispute with the signatory falls within the scope of the arbitration clause.[1]  Here, the arbitration clause states that "the Parties agree that the disputes arising between them concerning the validity, interpretation, termination or performance" of the Agreement will be arbitrated.  If the Kardashians are not considered "parties" to the agreement within the scope of the arbitration clause, they cannot use equitable estoppel to compel arbitration of the claims, even if the doctrine were otherwise applicable in this case.

The Kardashians point to no Florida decisions indicating that a Florida court would deem them parties to the agreement for arbitration clause purposes.  While Florida courts have on some occasions concluded that a non-signatory defendant can invoke an arbitration clause that limits arbitration to disputes between "the

---

[1] The Kardashians argue that World Rentals & Sales, LLC v. Volvo Construction Equipment Rents, Inc., 517 F.3d 1240 (11th Cir. 2008), indicates that equitable estoppel can be used to compel arbitration even when the arbitration clause itself does not cover the dispute.  The World Rentals decision cited and applied federal case law when analyzing the doctrine of equitable estoppel.  Id. at 1248.  That, we have since learned, was error.  See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31, 129 S. Ct. 1896, 1902 (2009).  State law, not federal law, applies.  For that reason, World Rentals is not controlling on the equitable estoppel issues in this case.

parties," in those cases the non-signatory defendants were officers and agents of a signatory, and they had themselves received rights and taken on obligations under the agreement. See Koechli, 870 So. 2d at 946; Ocwen Fin. Corp. v. Holman, 769 So. 2d 481, 483 (Fla. 4th DCA 2000) (concluding that an arbitration clause mandating arbitration of disputes between the parties included defendants who received rights and obligations under the agreement and who were sued for actions taken as officers and directors of a signatory). And the Florida Third District Court of Appeal has noted that this agent, officer, or director relationship "is critical to the exception" in decisions including Koechli and Ocwen for concluding that a non-signatory is a party under a contract's terms. Turner Constr. Co. v. Advanced Roofing, Inc., 904 So. 2d 466, 470 (Fla. 3d DCA 2005).

The Kardashians contend that our conclusion — that equitable estoppel is limited to compelling arbitration only if the plaintiff's claims are covered by the arbitration clause — is inconsistent with the doctrine's equitable nature.[2] They argue that the doctrine, based on notions of fairness, should operate to permit a non-signatory who is not bound to an agreement to enforce it notwithstanding the fact that the claim is outside of the arbitration clause's scope. Such a holding

---

[2] The Kardashians also contend that we are bound by our decision in MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 944, 947–48 (11th Cir. 1999), which applied federal equitable estoppel to compel arbitration under an arbitration clause covering disputes "between the parties hereto." That decision, however, is inapplicable, because here we are applying Florida's doctrine of equitable estoppel, not federal equitable estoppel law. Not only that, but the question of whether the clause covered disputes involving non-signatory parties was neither raised nor decided in MS Dealer.

would be, well, inequitable.  Under it, we would effectively be rewriting the agreement between the signatories about which disputes they would arbitrate to require one of them to arbitrate disputes that they had not agreed to.  That would violate the basic principle that parties can be forced to arbitrate only disputes that they have agreed to arbitrate.  See Klay, 389 F.3d at 1200 ("In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum."); see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1238 (11th Cir. 2008) ("[A] party may not be compelled to arbitrate if he did not agree to do so.").  Kroma EU never consented to arbitrate any disputes between it and the Kardashians or any other non-signatory.  All it consented to arbitrate were disputes between it and the other party, which was Tillett.

Consider this hypothetical.  Parties A and B enter an agreement with five parts.  They include a provision that obligates them to arbitrate disputes arising under Part I but not any other parts.  Party B gets into a dispute with C, who was not a party to the agreement, involving the proper interpretation of Part V.  Even though Party B relies on the agreement for his claim against outsider C, no court would conclude that C could use the doctrine of equitable estoppel to force Party B to arbitrate their dispute.  The reason is that the arbitration provision in the hypothetical does not cover that dispute, regardless of who the dispute is between.  To hold otherwise would require more than giving the outsider access to the

9

arbitration provision; it would also require rewriting that provision. The same reasoning applies in this case where the arbitration provision covers only "disputes arising between" the parties to the agreement, regardless of which part of the agreement is in dispute. Allowing the Kardashians to force Kroma EU to arbitrate their dispute would also require rewriting the arbitration provision in the agreement between Kroma EU and Tillett.

This does not mean that equitable estoppel can never be used by a non-signatory to force a signatory to the agreement to arbitrate a dispute involving the agreement. If the parties had consented in the arbitration clause to arbitrate any disputes concerning the validity, interpretation, etc., of the contract, instead of consenting to arbitrate only "disputes arising <u>between them</u>" (emphasis added) concerning the validity, interpretation, etc., of the contract, the Kardashians may have been able to use equitable estoppel to require Kroma EU to arbitrate the dispute between it and them. But, as the "between them" language shows, that is not what the parties to the agreement consented to do in the arbitration provision.

Our holding is that Florida's doctrine of equitable estoppel permits a non-signatory to an agreement to avail herself of an arbitration clause only when the claims asserted against her fall within the scope of the clause that the signatories had agreed upon. This is consistent with the reasoning behind the doctrine, which is that "[o]ne cannot both take advantage of contract provisions to seek to impose

10

liability . . . and at the same time avoid another contract term or provision for which it has no use." Giller v. Cafeteria of S. Beach Ltd., LLP, 967 So. 2d 240, 242 (Fla. 3d DCA 2007).  One does not avoid or violate an arbitration clause by refusing to arbitrate a dispute that is not covered by the clause.

Like makeup, Florida's doctrine of equitable estoppel can only cover so much.  It does not provide a non-signatory with a scalpel to re-sculpt what appears on the face of a contract.  The district court correctly denied the Kardashians' motion to compel Kroma EU to arbitrate the dispute between them.

**AFFIRMED**.