# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**RIADH A. FAKHOURY,**
Appellant,

v.

**ERIC PINTALUGA,**
Appellee.

No. 4D2024-1894

[April 30, 2025]

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey Levenson, Judge; L.T. Case No. CACE24-2559.

Daniel S. Newman and Michael T. Woods of Nelson Mullins Riley & Scarborough LLP, Miami, and Beverly A. Pohl of Nelson Mullins Riley & Scarborough LLP, Boca Raton, for appellant.

Elliot B. Kula and W. Aaron Daniel of Kula & Associates, P.A., Miami, for appellee.

WARNER, J.

Riadh A. Fakhoury appeals a nonfinal order denying a motion to compel arbitration based upon contracts between his investment companies and appellee/Plaintiff. Fakhoury raises two issues. We affirm as to the first, in which he argues that the agreements provide for dispute resolution under the JAMS rules, which delegate the determination of arbitrability to the arbitrator. This issue is unpreserved. Second, he maintains that the claims against him personally are intertwined with operating agreements, allowing him to assert the right to arbitration under the agreements, even though he is a non-signatory. We agree that he is entitled to enforce the arbitration provisions and reverse.

According to the complaint, when the parties met, Fakhoury presented himself as an experienced, sophisticated private capital manager. He convinced Plaintiff to invest more than $1.7 million in investment companies recommended by Fakhoury, which Fakhoury managed,

representing to Plaintiff that the investments would meet Plaintiff's economic goals.

To induce Plaintiff's trust, Fakhoury represented that he would diligently search for companies in which to invest, selecting companies demonstrating strong market relevance, promoting "highly disruptive technologies." He also would perform diligent corporate valuations and represented that he would research the corporate teams leading these investment opportunities.

Plaintiff signed operating agreements for the investment companies, six in all, controlled by Fakhoury. Fakhoury signed the agreements as manager of the companies, not in his individual capacity. The operating agreements' stated purpose was to research investment opportunities and to invest the capital accounts of the company. The agreements each included a broad arbitration provision applying to "any dispute arising out of or relating to" the operating agreements. Plaintiff paid monies into these investment companies managed by Fakhoury. The complaint does not allege that he paid the monies directly to Fakhoury.

Thereafter, Plaintiff received little information about the status of his investments. After demanding financial information, he learned that large sums had been transferred out of the investment companies without his knowledge or consent, and without an explanation or proof that Fakhoury had ever made any third-party investments apart from investing in his own or affiliated companies.

Due to his losses, Plaintiff sued Fakhoury personally for breach of fiduciary duty and conversion. After reciting the foregoing factual information, Plaintiff's breach of fiduciary duty claim alleged the following. Fakhoury had developed a close relationship with Plaintiff who reposed special trust and confidence in Fakhoury. Fakhoury had accepted that trust and assumed a fiduciary duty to Plaintiff. Fakhoury had breached the trust reposed in him by using his authority to misappropriate or squander more than $1 million from Plaintiff.

Plaintiff's conversion claim alleged that Fakhoury had stolen more than $1 million from Plaintiff and refused to return the funds. Plaintiff realleged the general allegations that Fakhoury had squandered funds on frivolous investments or more likely spent the money on himself through companies set up to sap Plaintiff's funds. Plaintiff requested compensatory damages and a constructive trust over Fakhoury's bank accounts and other assets which Fakhoury allegedly had acquired with Plaintiff's money.

Fakhoury moved to compel arbitration, arguing the torts were inextricably intertwined with the operating agreements. Plaintiff opposed the motion, emphasizing no arbitration agreement existed between Plaintiff and Fakhoury, and no arbitrable issues existed either. Plaintiff emphasized that his claims involved obligations pre-dating the operating agreements, and the claims did not rely on or require interpreting the agreements. After hearing argument, the trial court concluded Plaintiff was not trying to plead around the agreements and denied arbitration. This appeal follows.

Denial of a motion to compel arbitration is reviewed de novo when it presents a pure question of law. *U.S. Fire Ins. Co. v. Am. Walks at Port St. Lucie, LLC*, 386 So. 3d 575, 580 (Fla. 4th DCA 2024).

"Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

Courts favor arbitration provisions. *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). "Doubts about the scope of arbitration agreements are to be resolved in favor of arbitration." *Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481, 483 (Fla. 4th DCA 2000). A plaintiff "cannot avoid arbitration simply by choice of legal theory." *Giller v. Cafeteria of S. Beach Ltd., LLP*, 967 So. 2d 240, 242 (Fla. 3d DCA 2007).

Generally, a non-signatory cannot compel a signatory to submit to arbitration. *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004). But exceptions exist, such as when a signatory must rely on the contract to assert a claim against the non-signatory. *Id.* at 944.

To submit a claim to arbitration, a nexus must exist between the dispute and the contract that contains the arbitration provision. *Seifert*, 750 So. 2d at 638. A mere "but for" relationship—that the dispute would not arise but for the parties having a contractual relationship—is not enough to make a dispute "arise from or relate to" the contract. *Id.* A significant relationship or "contractual nexus" exists when the resolution of the dispute will require reference to or construction of the contract. *Jackson*, 108 So. 3d at 593.

> More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an

3

inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.

*Id.* at 593 (internal citation omitted) (citing *Seifert*, 750 So. 2d at 638-39). Here, the claims arise from the contractual relationship.

While Plaintiff denies that his claims require reference to, or construction of, the operating agreements and he instead argues the claims rely on precontractual conduct, we disagree. The allegations implicate actions which Fakhoury had taken pursuant to the agreements. The claims are also based upon conduct occurring after the agreements had been signed. Plaintiff invested his money in the investment companies and, after the agreements had been executed, Fakhoury allegedly breached his representations to properly investigate and converted Plaintiff's funds to his own use.

We agree with Fakhoury that any fiduciary duty to Plaintiff arises from the operating agreements, placing the parties in a unique relationship not otherwise imposed by law. Before the agreement was executed, Plaintiff was only a potential investment client of Fakhoury, and thus no special duty was owed. *See Bldg. Educ. Corp v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d DCA 2008). A fiduciary duty arose, if at all, when Fakhoury accepted the trust reposed in him after Plaintiff had signed the operating agreements and invested.[1] *See Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 633 (Fla. 4th DCA 2005) (recognizing that a fiduciary relationship does not exist when parties are dealing at arm's length because at that point neither has a duty to protect or benefit the other).

The operating agreements defined and memorialized Fakhoury's authority as manager, and a contractual nexus to the tort claims exists. The operating agreements' stated purpose was to investigate and invest the companies' capital, which is the same conduct which Plaintiff claims Fakhoury had breached in the breach of fiduciary claim. Further,

---

[1] Although Plaintiff alleges that he had a close relationship with Fakhoury and placed confidence and trust in him which Fakhoury accepted, these are conclusory allegations devoid of ultimate facts. Mere recitation of such allegations is insufficient by themselves to establish a fiduciary duty. *See Hogan v. Provident Life and Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff's losses arise from management of his funds invested in these investment companies.

The conversion claim is arbitrable because Plaintiff essentially alleges Fakhoury had improperly invested Plaintiff's funds or took the funds invested in the companies for his own use, which actions occurred through the investment agreements. The conversion claim also involves the same operative facts as the breach of fiduciary duty claim.

Thus, the tort claims are arbitrable, because those claims are inextricably intertwined with the operating agreements for investment. Whether Fakhoury breached a duty to Plaintiff or misappropriated funds will involve reference to the operating agreements.

Accordingly, we reverse the order denying arbitration and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

KLINGENSMITH, C.J., and GROSS, J., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

5