960 So.2d 768 (2007)
ROLLS-ROYCE PLC, Rolls-Royce AB, Rolls-Royce North American Holdings, Inc., and Rolls-Royce Commercial Marine, Inc., Appellant,
v.
ROYAL CARIBBEAN CRUISES LTD., Celebrity Cruises, Inc., Millenium Inc., Infinity Inc., Summit Inc., and Constellation Inc., Appellee.
No. 3D06-2459.
District Court of Appeal of Florida, Third District.
May 2, 2007.
Rehearing and Rehearing Denied August 10, 2007.
*769 Kenny Nachwalter and Stanley H. Wakshlag and Marcos Jimenez; Akerman Senterfitt and Michael B. Chavies, Miami, and Anthony J. Cuva, Tampa, and Christopher S. Carver, Miami; and Joel S. Perwin, for appellant.
Fowler Rodriguez and Maria Isabel Hoelle and G. Luis Dominguez and Mary C. Hubbard; Lewis Tein; Hicks & Kneale, and Mark Hicks, Miami, for appellee.
Before FLETCHER, SHEPHERD, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied August 10, 2007.
FLETCHER, J.
Rolls-Royce, PLC, Rolls-Royce, AB, Rolls-Royce North American Holdings, Inc., and Rolls-Royce Commercial Marine Inc. (collectively Rolls-Royce) appeal the denial of their motion to compel arbitration of a lawsuit filed against them by Royal Caribbean Cruises LTD., Celebrity Cruises, Inc., Millennium Inc., Infinity Inc., *770 Summit Inc., and Constellation Inc. (collectively Royal Caribbean). We affirm.
On March 16, 1998, Royal Caribbean entered into agreements with Chantiers de l'Atlantique (hereafter CAT) for construction of four luxury cruise shipsthe Millennium, Infinity, Summit and Constellation. The shipbuilding agreements provided for incorporation of pod propulsion systems in the cruise ships, but did not specify which system was to be used. Subsequently Royal Caribbean orally agreed with Rolls-Royce to use their Mermaid pod propulsion systems. The first ship to be completed and delivered was the Millenium which was accepted in June of 2000. According to Royal Caribbean the pod propulsion system on the ship failed to function properly from the beginning. The Infinity was accepted next, in March of 2001, and it also suffered propulsion system failures. As a result of these problems, Royal Caribbean and CAT executed additional agreements in connection with their acceptance of the Summit and Constellation, specifically addressing the pod propulsion deficiencies. Although they referred to Rolls-Royce as the subcontractor providing the pods, Rolls-Royce was not a party to these agreements. All contracts between Royal Caribbean and CAT included provisions requiring arbitration of any disputes arising from the parties' agreements. No written agreements exist between Royal Caribbean and Rolls-Royce.
After making numerous requests for repair, and several unsuccessful attempts at repair by Rolls-Royce, Royal Caribbean instituted the present action for damages against Rolls-Royce.[1] The complaint alleged several causes of action including breach of implied warranties; misrepresentation; fraud; deceptive and unfair trade practices; negligent testing, inspecting, repairing, servicing and performance of professional services; false and deceptive advertising and sales; tortious interference with Royal Caribbean's business relationships; and civil conspiracy to defraud. Rolls-Royce moved the trial court to compel arbitration of the claims. Rolls-Royce contended below, as it does here, that it is entitled to arbitration because Royal Caribbean's claims fall within the ambit of the contracts with CAT which call for arbitration of any disputes arising from the shipbuilding agreements.
We agree with the trial court's well-reasoned opinion determining that arbitration could not be compelled under the circumstances herein because the claims against Rolls-Royce are independent of the agreements between Royal Caribbean and CAT, and Royal Caribbean and Rolls-Royce had no agreement to arbitrate. In considering a motion to compel arbitration, the trial court must determine whether a valid written agreement to arbitrate exists, whether an arbitrable issue exists, and whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So.2d 633 (Fla. 1999). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Generally, therefore, a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration. *771 Koechli v. BIP Int'l, Inc., 870 So.2d 940 (Fla. 1st DCA 2004). In certain limited circumstances, however, non-signatories have been allowed to compel arbitration under the arbitration provisions of another's contract.
Rolls-Royce contends that two accepted exceptions to the general rule apply in this case. We disagree. The first exception asserted by appellee requires that the claim "arise out of or relate to" the agreement containing the arbitration provision. E.g., Seifert, 750 So.2d 633; Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc., 776 So.2d 940 (Fla. 3d DCA 2000). As recognized in Seifert, for the "claim to be considered `arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." 750 So.2d at 638. Resolution of the claims raised against Rolls-Royce does not require reference to or construction of the shipbuilding agreements between Royal Caribbean and CAT. The claims against Rolls-Royce solely concern its alleged misconduct in connection with provision of the Mermaid propulsion pods which were incorporated into the cruise ships.
The second exception is appropriate where there are allegations of concerted action by both a nonsignatory and one or more of the signatories to the contract. E.g., MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999); Armas v. Prudential Sec., Inc., 842 So.2d 210 (Fla. 3d DCA 2003). Here again the allegations point only to the action of Rolls-Royce, not the shipbuilder. Royal Caribbean complains about the poor performance of the propulsion pods, blaming Rolls-Royce for faults in their design, manufacture, and marketing. Rolls-Royce is also accused of negligence in its attempts at repairs. CAT had nothing to do with the design, manufacture, marketing or repair of the propulsion pods.
Accordingly, the trial court's denial of the motion to compel arbitration is affirmed.
NOTES
[1] The case was removed initially to federal court, but was remanded for lack of jurisdiction.